UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:22CR 221 (SRU) |
| v. | VIOLATIONS: |
| ANANTHAKUMAR THILLAINATHAN | 18 U.S.C. § 1347 (Health Care Fraud) |
| | 42 U.S.C. § 1320a-7b(b)(2)(A) (Kickbacks) |

INFORMATION

The United States Attorney charges:

COUNT ONE
(Health Care Fraud)

Unless otherwise indicated, at all times relevant to this Information:

1. Defendant ANANTHAKUMAR THILLAINATHAN ("THILLAINATHAN") was a medical doctor licensed to practice medicine by the State of Connecticut, Department of Public Health.

2. Beginning in or about 2017 and continuing through the date of this Information, MDCareNow LLC was a medical practice registered with the Connecticut Secretary of the State. THILLAINATHAN was the owner and president of MDCareNow.

3. The Connecticut Department of Social Services provided medical assistance to low-income persons through the Connecticut Medical Assistance Program (CTMAP). CTMAP's benefit packages, referred to as "HUSKY" or "Connecticut Medicaid," were jointly funded by the State of Connecticut and the federal government. Participating health care providers submitted claims for reimbursement for medically necessary benefits, items, and services rendered to Connecticut Medicaid members. As such, this program was a "health care benefit program" under 18 U.S.C. § 24(b).

4. Beginning in or about November 2017 and continuing through the date of this Information, MDCareNow was a participating provider enrolled as an internal medicine group in Connecticut Medicaid.

5. Beginning in or about January 2019 and continuing through the date of this Information, MDCareNow was also a participating provider enrolled as a behavioral health clinician group in Connecticut Medicaid.

6. On or about November 13, 2017 and January 13, 2019, THILLAINATHAN, on behalf of MDCareNow, and on or about November 30, 2020, on behalf of himself, electronically signed CTMAP provider agreements, which contained the following language:

> Provider acknowledges and understands that the prohibitions set forth in state and federal law include, but are not limited to, the following:
>
> a. false statements, claims, misrepresentations, concealment, failure to disclose and conversion of benefits;
> b. any giving or seeking of kickbacks, rebates, or similar remuneration;
> c. charging or receiving reimbursement in excess of that provided by the State; and
> d. false statements or misrepresentation in order to qualify as a provider.

7. Psychotherapy, also known as outpatient therapy or "OPT," was a mental health service covered by Connecticut Medicaid.

8. Providers such as MDCareNow billed health care benefit programs such as Connecticut Medicaid using a five-digit Current Procedural Terminology ("CPT") code that identified the nature and complexity of the services provided by the participating provider. Specific CPT codes were assigned for psychotherapy services.

9. CPT code 90837 described a 60-minute individual psychotherapy session performed by a licensed mental health provider. For a provider to properly utilize CPT code 90837, they were required to meet face-to-face with the patient, individually for a minimum of 53 minutes.

The Connecticut Medicaid reimbursement rate for CPT code 90837 was approximately between $94 and $98.

10. CPT code 90834 described a 45-minute individual psychotherapy session performed by a licensed mental health provider. For a provider to properly utilize CPT code 90834, they were required to meet face-to-face with the patient, individually for between 38 and 52 minutes. The Connecticut Medicaid reimbursement rate for CPT code 90834 was approximately $66.

11. CPT code 90791 described a psychiatric diagnostic evaluation conducted at the onset of an illness or suspected illness. Providers could repeat this evaluation for the same patient if an extended break in treatment occurred, usually around six months from the last time the patient was treated. The reimbursement rate for CPT code 90791 was approximately $103.

12. Employee #1, whose identity is known to the United States Attorney, was a licensed clinical social worker who worked at MDCareNow from approximately June 2019 to April 2020. Employee #1 was a Connecticut Medicaid enrolled provider.

13. Employee #2, whose identity is known to the United States Attorney, was a licensed clinical social worker who worked at MDCareNow from approximately April 2020 to December 2021. Employee #2 was a Connecticut Medicaid enrolled provider.

14. Employee #3, whose identity is known to the United States Attorney, was a licensed clinical social worker who worked at MDCareNow from approximately January 2021 to the present. Employee #3 was a Connecticut Medicaid enrolled provider.

THILLAINATHAN'S Scheme and Artifice to Defraud Connecticut Medicaid

15. Beginning no later than June 2019 and ending in or about May 2022, THILLAINATHAN knowingly, willfully, and with the specific intent to defraud, executed a

scheme and artifice to defraud Connecticut Medicaid and to obtain money and property owned by and under the custody and control of Connecticut Medicaid by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items, and services, by submitting and causing to be submitted claims to Connecticut Medicaid for psychotherapy services that THILLAINATHAN knew patients did not receive from Employees #1, #2, and #3.

## Manner and Means

16. It was part of the scheme and artifice that THILLAINATHAN took, among others, the following steps in the District of Connecticut and elsewhere.

17. MDCareNow submitted to Connecticut Medicaid claims for reimbursement for psychotherapy services purportedly provided to Connecticut Medicaid patients by Employees #1, #2, and #3. Employees #1, #2, and #3 did not review these claims and did not know which CPT codes were assigned to the services provided. Instead, at the direction of THILLAINATHAN, a biller assigned CPT codes for these services, and THILLAINATHAN approved all claims. THILLAINATHAN knew that: (i) the psychotherapy CPT codes assigned were not supported by medical records provided by Employees #1, #2, and #3; and (ii) such services were not, in fact, provided.

18. Specifically, THILLAINATHAN knew that Employees #1, #2, and #3 did not provide 45- and 60-minute psychotherapy services or complete psychiatric diagnostic evaluations significant enough to be assigned CPT code 90791, yet THILLAINATHAN knowingly and willfully submitted and caused to be submitted Connecticut Medicaid claims for reimbursements of such services. Furthermore, when THILLAINATHAN submitted, and caused to be submitted,

these claims, THILLAINATHAN knew that such claims for reimbursement from Connecticut Medicaid were fraudulent.

### Execution of the Scheme and Artifice

19. On or about October 25, 2021, to execute the above scheme and artifice, THILLAINATHAN submitted and caused to be submitted to Connecticut Medicaid a materially false claim for psychotherapy services, which represented that on or about October 21, 2021, Employee #3 had rendered a 60-minute psychotherapy session to Patient A, an MDCareNow patient whose identity is known to the United States Attorney when, as THILLAINATHAN knew, no psychotherapy services had been provided on that date to Patient A by Employee #3.

All in violation of Title 18, United States Code, Section 1347.

### COUNT TWO
(Payment of Kickbacks in Connection with a Federal Health Care Program)

20. Paragraphs one through six are incorporated by reference.

21. Beginning in at least November 2019 and ending in or about May 2021, THILLAINATHAN, knowingly and willfully paid remuneration to a third-party "patient recruiting" company for each Connecticut Medicaid patient the company recruited and provided with transportation to MDCareNow for medical services.

22. As charged in this Information, by way of example, on or about December 16, 2019, in the District of Connecticut and elsewhere, THILLAINATHAN did knowingly and willfully offer and pay remuneration, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, to a third-party patient recruiting company to induce the company to refer an individual to a person, that is, MDCareNow and THILLAINATHAN, for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole or in

part under a Federal health care program as defined in Title 42, United States Code, Section 1320a-7b(f), that is, Connecticut Medicaid.

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

UNITED STATES OF AMERICA

*/s/ Vanessa Roberts Avery*
VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

*/s/ Heather Cherry*
HEATHER L. CHERRY
ASSISTANT UNITED STATES ATTORNEY