

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

| | |
|---|---|
| *Connecticut Financial Center* | *(203)821-3700* |
| *157 Church Street, 25th Floor* | *Fax (203) 773-5376* |
| *New Haven, Connecticut 06510* | *www.justice.gov/usao/ct* |

November 3, 2022

Christine L. Landis
The Law Offices of Mark Sherman, LLC
29 5th Street
Stamford, CT  06905

        Re:     United States v. Ananthakumar Thillainathan
                 Case No.

Dear Attorney Landis:

This letter confirms the plea agreement between your client, Ananthakumar Thillainathan (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

## THE PLEA AND OFFENSE

In consideration for the benefits offered under this agreement, the defendant agrees to waive his right to be indicted and to plead guilty to a two-count information charging a violation of 18 U.S.C. § 1347 (Health Care Fraud) and a violation of 42 U.S.C. § 1320a-7b(b)(2)(A) (Kickbacks).

The defendant understands that to be guilty of a violation of 18 U.S.C. § 1347, the following essential elements must be satisfied:

1. There was a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises in connection with the delivery of or payment for health care benefits, items, or services;
2. The defendant knowingly and willfully executed or attempted to execute that scheme or artifice with the intent to defraud; and
3. The target of the scheme was a health care benefit program, as defined in 18 U.S.C. § 24(b).

*Christine L. Landis, Esq.*
*Page 2*

The defendant understands that to be guilty of a violation of 42 U.S.C. § 1320a-7b(b)(2)(A), the following essential elements must be satisfied:

1. The defendant offered or paid any remuneration (including any kickback, bribe, or rebate) directly or indirectly, openly or secretly, in cash or in kind;
2. The payment (or offer) was made to a person to induce that person to refer an individual to a person for the furnishing or arranging for the furnishing of an item or service that could be paid for, in whole or in part, under a Federal health care program; and
3. The defendant did so knowingly and willfully.

## THE PENALTIES

### Imprisonment

These offenses each carry a maximum penalty of 10 years.

### Supervised Release

In addition, for each offense, the Court may impose a term of supervised release of not more than three years to begin after any term of imprisonment. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to 2 years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

A violation of 18 U.S.C. § 1347 carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

A violation of 42 U.S.C. § 1320a-7b(b)(2) carries a maximum fine of $100,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offense which is $100,000.

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $200. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

*Christine L. Landis, Esq.*
*Page 3*

<u>Restitution</u>

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court. In any case in which the United States is a victim, the district court will ensure that all other victims receive full restitution before the United States receives any restitution. 18 U.S.C. § 3664(i).

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to make restitution in the amount of $1,674,880.

<u>Interest, penalties and fines</u>

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).

## THE SENTENCING GUIDELINES

<u>Applicability</u>

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

<u>Acceptance of Responsibility</u>

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

*Christine L. Landis, Esq.*
*Page 4*

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

<u>Stipulation</u>

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

<u>Guideline Stipulation</u>

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The Government and the defendant agree that the violations of 18 U.S.C. § 1347 (Health Care Fraud) and 42 U.S.C. § 1320a-7b(b)(2)(A) (Kickbacks) are grouped together into a single group under U.S.S.G. § 3D1.2(d). The offense level for this group, pursuant to U.S.S.G. § 3D1.3(b), is the highest offense level from application of § 2B1.1 or § 2B4.1, using the

*Christine L. Landis, Esq.*
*Page 5*

aggregate amount of loss (from the health care fraud) and bribe or amount of improper benefit (from the kickback offense).

<u>Count 1 – Health Care Fraud</u>

The defendant's base offense level under U.S.S.G. § 2B1.1 is 6. Pursuant to U.S.S.G. § 2B1.1(b), that level is increased by 16 because the aggregate of the health care fraud loss and improper benefit from kickbacks attributable to the defendant is more than $1,500,000 but less than $3,500,000. Two levels are added under U.S.S.G. § 2B1.1(b)(7) because the defendant was convicted of a Federal health care offense involving a Government health care program and the loss was more than $1,000,000 but less than $7,000,000. Two levels are added under U.S.S.G. § 3B1.3 because the defendant abused a position of trust in a manner that significantly facilitated the commission of the offense. Thus, the offense level for Count One, before adjustment for acceptance of responsibility, is 26.

<u>Count 2 – Kickbacks</u>

The defendant's base offense level under U.S.S.G. § 2B4.1 is 8. Pursuant to U.S.S.G. § 2B4.1(b)(1)(B), the base level is increased by 16 because the aggregate of the health care fraud loss and improper benefit from kickbacks attributable to the defendant is more than $1,500,000 but less than $3,500,000. Two levels are added under U.S.S.G. § 3B1.3 because the defendant abused a position of trust in a manner that significantly facilitated the commission of the offense. Thus, the offense level for Count Two, before adjustment for acceptance of responsibility, is also 26.

Because both § 2B1.1 and § 2B4.1 result in an offense level of 26, 26 is the applicable unadjusted offense level. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 23.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 23, assuming a Criminal History Category I, would result in a range of 46 to 57 months of imprisonment (sentencing table) and a fine range of $20,000 to $200,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one to three years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

*Christine L. Landis, Esq.*
*Page 6*

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Christine L. Landis, Esq.
Page 7

<u>Discovery</u>

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty.  The defendant acknowledges that the Government may not have yet produced any or all discovery material.  By entering this plea of guilty, the defendant waives the right to receive any additional discovery, including but not limited to discovery under the Jencks Act, the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).  The defendant waives any and all right to withdraw his plea or attack his conviction, either on direct appeal or collaterally, on the ground that the Government has not produced any discovery material other than what has already been produced as of the date of the signing of this agreement.

<u>Waiver of Statute of Limitations</u>

The defendant agrees that, should the convictions following defendant's guilty pleas be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution.  The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

<u>Waiver of Right to Challenge Conviction</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Waiver of Right to Appeal or Collaterally Attack Sentence</u>

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, if that sentence does not exceed 57 months of imprisonment, a 3-year term of supervised release, a $200 special assessment, a $200,000 fine, and $1,674,880 in restitution even if the Court imposes such a sentence based on an analysis different from that specified above.  The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or

*Christine L. Landis, Esq.*
*Page 8*

concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

<u>Waiver of Challenge to Plea Based on Immigration Consequences</u>

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to health care fraud, removal is presumptively mandatory. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea.  Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on the immigration consequences of his guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty.  The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law.  The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney.  The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

*Christine L. Landis, Esq.*
*Page 9*

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. The defendant further understands that his guilty plea may result in his exclusion from participating in Medicaid, Medicare, and other government health care programs. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the health care fraud and kickback schemes which form the basis of the information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

Christine L. Landis, Esq.
Page 10

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

HEATHER CHERRY
ELENA CORONADO
ASSISTANT UNITED STATES ATTORNEYS

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

ANANTHAKUMAR THILLAINATHAN          Date   11/3/22
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

CHRISTINE L. LANDIS, ESQ.          Date   11/3/22
Attorney for the Defendant

Christine L. Landis, Esq.
Page 11

## STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT

The defendant and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to the information:

1.   Beginning in 2015 and continuing through the date of this agreement, **Ananthakumar Thillainathan ("Thillainathan")** was a medical doctor licensed to practice medicine by the State of Connecticut, Department of Public Health.

2.   Beginning in or about 2017 and continuing through the date of this agreement, MDCareNow LLC was a medical practice registered with the Connecticut Secretary of the State. **Thillainathan** was the owner and president of MDCareNow.

3.   The Connecticut Department of Social Services provided medical assistance to low-income persons through the Connecticut Medical Assistance Program (CTMAP). CTMAP's benefit packages, referred to as "HUSKY" or "Connecticut Medicaid," were jointly funded by the State of Connecticut and the federal government. Participating health care providers submitted claims for reimbursement for medically necessary benefits, items, and services rendered to Connecticut Medicaid members. As such, this program was a "health care benefit program" under 18 U.S.C. § 24(b).

4.   Beginning in or about November 2017 and continuing through the date of this agreement, MDCareNow was a participating provider enrolled as an internal medicine group in Connecticut Medicaid. Beginning in or about January 2019 and continuing through the date of this agreement, MDCareNow was also a participating provider enrolled as a behavioral health clinician group in Connecticut Medicaid.

5.   On or about November 13, 2017 and January 13, 2019, **Thillainathan,** on behalf of MDCareNow, and on or about November 30, 2020, on behalf of himself, electronically signed CTMAP provider agreements, which contained the following language:

Provider acknowledges and understands that the prohibitions set forth in state and federal law include, but are not limited to, the following:
a.   false statements, claims, misrepresentation, concealment, failure to disclose and conversion of benefits;
b.   any giving or seeking of kickbacks, rebates, or similar remuneration;
c.   charging or receiving reimbursement in excess of that provided by the State; and
d.   false statements or misrepresentation in order to qualify as a provider.

### Fraudulent Billing of Psychotherapy Services

6.   Psychotherapy, also known as outpatient therapy or "OPT," was a mental health service covered by Connecticut Medicaid.

7.   Providers such as MDCareNow billed health care benefit programs such as Connecticut Medicaid using a five-digit Current Procedural Terminology ("CPT") code that

Christine L. Landis, Esq.
Page 12

identified the nature and complexity of the services provided by the participating provider. Specific CPT codes were assigned for psychotherapy services.

8. CPT code 90837 described a 60-minute individual psychotherapy session performed by a licensed mental health provider. For a provider to properly utilize CPT code 90837, they were required to meet face-to-face with the patient, individually for a minimum of 53 minutes. The Connecticut Medicaid reimbursement rate for CPT code 90837 was approximately between $94 and $98.

9. CPT code 90834 described a 45-minute individual psychotherapy session performed by a licensed mental health provider. For a provider to properly utilize CPT code 90834, they were required to meet face-to-face with the patient, individually for between 38 and 52 minutes. The Connecticut Medicaid reimbursement rate for CPT code 90834 was approximately $66.

10. CPT code 90791 described a psychiatric diagnostic evaluation conducted at the onset of an illness or suspected illness. Providers could repeat this evaluation for the same patient if an extended break in treatment occurred, usually around six months from the last time the patient was treated. The reimbursement rate for CPT code 90791 was approximately $103.

11. MDCareNow purported to provide psychotherapy services through licensed clinical social workers.

12. Employee #1 was a licensed clinical social worker who worked at MDCareNow from approximately June 2019 to April 2020. Employee #1 was paid $25 per hour. Employee #1 was a Connecticut Medicaid enrolled provider.

13. Employee #2 was a licensed clinical social worker who worked at MDCareNow from approximately April 2020 to December 2021. Employee #2 was a Connecticut Medicaid enrolled provider.

14. Employee #3 was a licensed clinical social worker who worked at MDCareNow from approximately January 2021 to the present. Employee #3 was paid $30 per hour. Employee #3 was a Connecticut Medicaid enrolled provider.

15. Beginning no later than June 2019 and ending in or about May 2022, **Thillainathan** knowingly, willfully, and with the specific intent to defraud, executed a scheme and artifice to defraud Connecticut Medicaid and to obtain money or property under the custody and control of Connecticut Medicaid by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, by submitting and causing to be submitted claims to Connecticut Medicaid for psychotherapy services that **Thillainathan** knew patients did not receive from Employees #1, #2, and #3.

16. It was part of the scheme and artifice that MDCareNow submitted to Connecticut Medicaid claims for reimbursement for psychotherapy services purportedly provided to Connecticut Medicaid patients by Employees #1, #2, and #3. Employees #1, #2, and #3 did not review these claims and did not know which CPT codes were assigned to the services provided. Instead, at the direction of **Thillainathan**, a biller assigned CPT codes for these services, and

Christine L. Landis, Esq.
Page 13

**Thillainathan** approved all claims. **Thillainathan** knew that: (i) the psychotherapy CPT codes assigned were not supported by medical records provided by Employees #1, #2, and #3; and (ii) such services were not, in fact, provided.

17. Specifically, **Thillainathan** knew that Employees #1, #2, and #3 did not provide 45- and 60-minute psychotherapy services or complete psychiatric diagnostic evaluations significant enough to be assigned CPT code 90791, yet **Thillainathan** knowingly and willfully submitted or caused to be submitted Connecticut Medicaid claims for reimbursements of such services. Furthermore, when **Thillainathan** submitted, or caused to be submitted, these claims, **Thillainathan** knew that such claims for reimbursement from Medicaid were fraudulent.

18. For example, on or about September 2, 2021, Employee #3 left a voicemail requesting to speak with Patient A. Employee #3 and Patient A did not speak. On or about September 5, 2021, **Thillainathan** caused to be submitted a fraudulent claim to Medicaid for reimbursement that falsely represented that Employee #2 had rendered a 60-minute psychotherapy session on September 2, 2021 for Patient A. In truth and in fact, **Thillainathan** knew that the patient did not receive the service represented by the false claim.

19. As another example, on or about October 21, 2021, Employee #3 left a voicemail requesting to speak with Patient A, whose identity is known to the parties. Employee #3 and Patient A did not speak. On or about October 25, 2021, **Thillainathan** caused to be submitted a fraudulent claim to Medicaid for reimbursement that falsely represented that Employee #3 had rendered a 60-minute psychotherapy session on October 21, 2021 for Patient A. In truth and in fact, **Thillainathan** knew that the patient did not receive the service represented by the false claim.

20. As another example, on or about November 4, 2021, Employee #3 spoke directly to Patient A on the phone. During this call, Patient A told Employee #3 that she was not interested in therapy services. The call lasted approximately two minutes. On or about November 13, 2021, **Thillainathan** caused to be submitted a fraudulent claim to Medicaid for reimbursement that falsely represented that Employee #3 had rendered a 60-minute psychotherapy session on November 4, 2021 for Patient A. In truth and in fact, **Thillainathan** knew that the patient did not receive the service represented by the false claim.

21. As another example, on or about November 10, 2021, **Thillainathan** caused to be submitted a fraudulent claim to Medicaid for reimbursement that falsely represented that Employee #3 had rendered a 60-minute psychotherapy session on October 9, 2021 for Patient A. In truth and in fact, there was no call or contact made with Patient A on October 9, 2021 and **Thillainathan** knew that the patient did not receive the service represented by the false claim.

22. In total, from in or about June 2019 through in or about May 2022, **Thillainathan** knowingly and willfully submitted, or caused to be submitted, approximately $839,724 in fraudulent Connecticut Medicaid claims for psychotherapy services purportedly provided by Employees #1, #2, and #3, which in fact were not provided and which **Thillainathan** knew were not provided.

*Christine L. Landis, Esq.*
*Page 14*

<u>Payment of Kickbacks</u>

23. Beginning in at least November 2019 and ending in or about May 2021, **Thillainathan**, knowingly and willfully paid remuneration to a third-party "patient recruiting" company for each Connecticut Medicaid patient the company recruited and provided with transportation to MDCareNow for medical services.

24. **Thillainathan** knew that remuneration paid to a third party on a per-patient basis for Connecticut Medicaid patient recruiting was a violation of the CTMAP provider agreement.

25. Specifically, **Thillainathan** knowingly and willfully paid the patient recruiting company approximately $100 per patient for an initial visit to MDCareNow and approximately $40 per patient for any subsequent visit. In addition, **Thillainathan** paid the company other marketing fees for its patient recruiting services.

26. As an example, on or about December 16, 2019, **Thillainathan** knowingly and willfully paid the company approximately $3,300 for the recruitment of 33 Connecticut Medicaid patients between November 22, 2019 and December 12, 2019.

27. As another example, on or about March 11, 2020, **Thillainathan** knowingly and willfully paid the company approximately $1,925 for the recruitment of 20 Connecticut Medicaid patients between March 2 and March 8, 2020.

28. As another example, on or about March 17, 2021, **Thillainathan** knowingly and willfully paid the company approximately $1,940 for the recruitment of 23 Connecticut Medicaid patients between February 1, 2021 and March 7, 2021.

29. As another example, on or about May 5, 2021, **Thillainathan** knowingly and willfully paid the company approximately $2,580 for the recruitment of 30 Connecticut Medicaid patients between March 8, 2021 and April 25, 2021.

30. In total, from in or about November 2019 through in or about May 2021, **Thillainathan** knowingly and willfully paid the patient recruiting company for the recruitment of approximately 1,018 Connecticut Medicaid patients.

31. The Connecticut Medicaid claims reimbursed for these patients for services MDCareNow provided between in or about November 2019 through in or about May 2021 totaled approximately $1,071,328.

*Christine L. Landis, Esq.*
*Page 15*

This written stipulation is part of the plea agreement.  The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

_____
ANANTHAKUMAR THILLAINATHAN
The Defendant

_____
HEATHER CHERRY
ELENA CORONADO
ASSISTANT U.S. ATTORNEYS

_____
CHRISTINE L. LANDIS, ESQ.
Attorney for the Defendant

*Christine L. Landis, Esq.*
*Page 16*

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A.  Return the property to the owner of the property or someone designated by the owner; or

   B.  If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -
   (I)  the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A.  Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B.  Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C.  Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant.  In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which might originally have been imposed by the Court.  *See* 18 U.S.C. §§ 3613A, 3614. If The Court

*Christine L. Landis, Esq.*
*Page 17*

may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.